Otho J. Sharpe v. Commissioner.
Sharpe v. Commissioner
Docket No. 44265.
United States Tax Court
T.C. Memo 1956-262; 1956 Tax Ct. Memo LEXIS 31; 15 T.C.M. (CCH) 1384; T.C.M. (RIA) 56262; November 26, 1956
*31 In 1944 the petitioner transferred to a newly formed corporation certain property for use in manufacturing plastic toys as well as orders for toys. The corporation recorded $20,000 as a liability for commissions payable to the petitioner. Stock was issued and charged against this liability and deduction of $20,000 was taken by the corporation for commissions, as a business expense. In 1946 the petitioner received 100 shares of the corporation's stock in lieu of $20,000 owed him by the corporation as commissions earned but not withdrawn. He received the stock and returned to the corporation five of its notes which had been given to him in 1945 for commissions owing at that time. Held: 1. The petitioner failed to prove that the 1944 transaction in which he received corporation stock was a nontaxable exchange within the scope of sections 112(b)(5) and 112(h), I.R.C. 1939. 2. The petitioner failed to prove that he filed an income tax return for 1946. 3. The petitioner received income in the amount of $20,000 in 1946 as a result of the transaction in which he received 100 shares of corporation stock. The notes given him in 1945 had no fair market value and were not intended as *32 payment at that time. 4. The addition to tax of 25 per cent for failure to file an income tax return for the year 1946 was proper. Frank C. Leyshon, Esq., for the petitioner. Robert E. Johnson, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion The Commissioner determined the following deficiencies in petitioner's income tax: Addition to Tax
Year
Deficiency
Section 291(a)
1944
$9,648.20
1946
9,250.15
$2,312.54
There are four issues *33 to be decided: (1) whether a transaction in which the petitioner received stock of a corporation in exchange for certain property and orders for plastic toys was a nontaxable exchange; (2) whether petitioner filed an income tax return for the year 1946; and (3) whether stock received in 1946 for certain commissions earned in 1945 was income to petitioner in 1946; and (4) whether petitioner is liable for an addition to tax of 25 per cent for failure to file an income tax return for the year 1946. Findings of Fact Some of the facts are stipulated. They are so found and are incorporated herein by this reference. Petitioner, Otho J. Sharpe, is an individual residing in Byesville, Ohio. He filed his 1944 income tax return with the collector of internal revenue for the district of North Carolina. Until early 1944 petitioner was a salesman for the Bergen Toy Manufacturing Company of New Jersey. In the early part of 1944, and prior to July of that year, petitioner was able to secure orders for plastic toys in excess of $300,000. Also he designed molds for the manufacture of toys, had the molds constructed, and prepared advertising material. He transferred these properties and orders *34 on July 15, 1944, to Plastic Toys, Inc., an Ohio corporation incorporated on January 22, 1944. The July 15, 1944 transfer was evidenced by a bill of sale which stated the following: "Know all men by these presents, that O. J. Sharpe, of Hasbrouck Heights, N.J., the grantor, in consideration of the transfer to him of one hundred (100) shares of the no par stock of Plastic Toys, Inc. an Ohio corporation, the grantee, the receipt of which is hereby acknowledged, does hereby Grant, Bargain, Sell, and Convey unto the said grantee, all of the assets of the business operated by him under the name of the Plastic Toys, Inc., including all cash, orders on hand, good will established by him, molds, and every other item or thing in connection with said business. * * *
"It is hereby provided that as a condition to the turning over of the above assets to the grantee that there shall be no net profit made by the said grantee company until such time as said company shall accumulate over and above its ordinary expenses the sum of twenty thousand dollars ($20,000.00) which sum of money as it accumulates shall be deposited in a separate account, and be carried in said account as capital assets *35 or be used in the purchase of capital assets in the name of the grantee company. Upon the accumulation of said sum of twenty thousand dollars in cash, or its equivalent in capital assets, or a total sum of such amount in cash and capital assets, money received by the grantee company shall become the absolute property of the company. * * *
"I hereby authorize the Secretary of the Plastic Toys, Inc. to issue fifty (50) of the above shares to J. E. Wolfe, of Cambridge, Ohio, and one (1) share to Frank C. Leyshon, Cambridge, Ohio, and do hereby authorize J. E. Wolfe to exercise such rights to purchase stock in the corporation as I may have under the above contract, provided that such rights to purchase under the option may be exercised in the future only by myself and J. E. Wolfe, personally, and can not further be assigned, such rights of purchase to be exercised equally." In connection with this transfer, Plastic Toys, Inc. made the following entry on its books: a debit to "commissions payable," and a credit to "capital stock," both in the amount of $20,000. These commissions in the amount of $20,000 on the original orders were deducted by the corporation as an expense on its *36 income tax return for the fiscal year ended June 30, 1945. On July 16, 1944, 100 shares of common stock of Plastic Toys, Inc. were issued to the petitioner. The 100 shares constituted all of the corporation's outstanding shares at that time. Some time after July 16, 1944 and before June 30, 1945, 50 of these shares were transferred to J. E. Wolfe. The balance sheet of Plastic Toys for July 1, 1945, as condensed, shows: Current Assets: Cash on Hand
$ 125.00
Cash in Bank, Cambridge
$ 585.63
Cash in Bank, Byesville
977.51
1,563.14
Accounts Receivable
59,314.05
Inventory of Raw Materials
12,235.43
Inventory of Manufacturing Supplies
$ 359.46
Inventory of Shipping Supplies
5,959.74
Inventory of Finished & Semi-finished Goods
2,793.91
Total Current Assets
$82,350.73
Fixed Assets: Machinery and Equipment
$6,998.92
Less: Reserve for Depreciation
466.59
$ 6,532.33
Total Fixed Assets
$ 6,532.33
TOTAL ASSETS
$88,883.06
Liabilities: Bills Payable
$26,318.63
Commissions Payable
1,605.73
Other Liabilities
6,281.04
Total Liabilities
$34,205.40
Net Worth: Capital Stock Outstanding
$20,000.00
Net Profit
34,677.66
Total Net Worth
$54,677.66
TOTAL LIABILITIES AND NET WORTH
$88,883.06
*37 On July 1, 1945, Plastic Toys, Inc. issued five "demand plus 60 days" notes totalling $13,319.26, to petitioner for commissions earned by him in 1945 and owing to him at that date. On January 22, 1946, petitioner and Plastic Toys, Inc. entered into an agreement which stated the following: "This agrement made this 22nd day of January, 1946, by and between Plastic Toys, Inc. and O. J. Sharpe, "WITNESSETH: "WHEREAS, Plastic Toys, Inc. owes to O. J. Sharpe, certain money as commissions which the said O. J. Sharpe has earned and has not withdrawn from the Company, and, "WHEREAS, the said O. J. Sharpe is desirous of taking out said money in stock instead of cash and liquidating said account, and, "WHEREAS, the Company has duly authorized said stock to be issued with the option of repurchasing said stock from the said O. J. Sharpe, should the Company so desire. "NOW, THEREFORE, be it hereby agreed by and between the parties hereto: "FIRST: That the officers of said Company are hereby authorized to issue to O. J. Sharpe, stock in the amount of twenty thousand dollars ($20,000) at two hundred dollars ($200.00) per share, which stock shall be in full and complete satisfaction *38 of the commissions owed by the Company to C. J. Sharpe, in the amount of twenty thousand dollars ($20,000.00)." * * *
On January 22, 1946, Plastic Toys, Inc. issued 100 shares of its common stock to petitioner. This transaction was recorded by the corporation on its books by a debit to "commissions payable" and a credit to "capital stock", both in the amount of $20,000. Petitioner returned the five notes to Plastic Toys, Inc.
On December 14, 1946, Plastic Toys, Inc. issued 23 shares of its common stock to petitioner. This transaction was recorded by the corporation on its books by a debit to "commissions payable" and a credit to "capital stock," both in the amount of $4,600. Petitioner did not file an income tax return for the year 1946. Petitioner's failure to file an income tax return for the year 1946 was not due to reasonable cause and was due to willful neglect. Opinion TIETJENS, Judge: The first issue involves the Commissioner's determination that the petitioner received gross income in 1944 in the amount of $20,000, representing compensation for services rendered to the corporation, Plastic Toys, Inc., which the petitioner failed to include in his income tax *39 return for that year. The petitioner contends that the Commissioner is in error for three reasons. First, he contends that the 1944 transaction in which he received stock of the corporation was nontaxable under sections 112(b)(5) and 112(h) of the Internal Revenue Code of 1939[1] since he exchanged property solely for stock and immediately thereafter was in control of the corporation. According to the petitioner's testimony, the corporation, although organized in January 1944, was not in operation until July of that year. In the meantime the petitioner was busy securing orders, designing molds for the manufacture of toys, arranging construction of such molds, and preparing advertising, including art work required for illustrations and announcement of prices. He says that in July 1944 he transferred to the corporation everything he owned in the toy business and leased a building for use as a factory, and the corporation commenced business operations. In return for the assets he transferred to the corporation he received 100 shares of stock which was all of the issued and outstanding stock of the corporation at that time and therefore he was in control of the corporation. *40 The burden is upon the petitioner to prove that the Commissioner's determination was erroneous. Tax Court Rule 32. Apparently some property was transferred to the corporation. We do not have a balance sheet as of July 1944, but the balance sheet as of June 30, 1945 shows that among the assets were machinery and equipment, raw materials and goods in process of manufacture. But the petitioner has failed to show that he was in control of the corporation within the meaning of sections 112(b)(5) and 112(h) following the transaction of July 15 and 16, 1944. The agreement of July 15 authorizes the issuance of 50 of the 100 shares to J. E. Wolfe. There is no explanation of the source of Wolfe's interest in the business, nor is it shown when the shares were issued to him, except that he is shown on the corporation's tax return as a shareholder as of June 30, 1945. In Mojonnier & Sons, Inc., 12 T.C. 837 (1949) we held that where the owners of a business induced their son and son-in-law to enter the business upon the promise of shares in the corporation to be formed and after the transfer of the business to the corporation stock was issued, 74.5 per cent to the transferors and *41 the remainder to their son and son-in-law and others, the transferors did not have the 80 per cent control prescribed by sections 112(b)(5) and 112(h) and the transfer was a taxable exchange. The right of the other stockholders to receive shares existed before the transfer. The same principle may be applicable here with respect to the interest of J. E. Wolfe in Plastic Toys, Inc. The petitioner has not shown that prior to the transfer of July 15, 1944, Wolfe was not entitled to receive this stock. From all the evidence available it would appear that his interest existed prior to the transfer. Hence it is not shown that the petitioner had 80 per cent control after this transaction. It is stipulated that the petitioner transferred to the corporation orders in excess of $300,000 which he had secured for the purchase of goods and that the corporation recorded as a liability commissions payable thereon to the petitioner in the amount of $20,000. Stock was issued and charged against this liability. A deduction was taken by the corporation for the amount of these commissions as a business expense. It is not material whether the petitioner performed services for the corporation prior to *42 July 1944. If he earned the commissions by turning over the orders in July, they are nonetheless compensation for services and taxable as income. The stock was taxable as income at the fair market value thereof when received, and since the corporation treated the value as $20,000 and the petitioner has not shown the value to be less, the Commissioner must be sustained. The manner in which the transaction was recorded on the books of the corporation, although not controlling, at least supports the Commissioner's determination. The petitioner's second contention is that he included the $20,000 worth of stock in his 1944 income tax return and that it is error for the Commissioner to include it a second time. The petitioner's income tax return showed "other income" of $32,709.62. This he says includes the $20,000 in stock. Petitioner also claimed a deduction that year in the amount of $32,709.62 for "advances to Plastic Toys, Inc. in the establishment of its business and conduct of its business until well on its way." The Commissioner in his deficiency statement eliminated the item of $32,709.62 of "other income" and also eliminated the corresponding deduction of $32,709.62 for advances. *43 He then determined that petitioner realized income of $20,000 on receipt of the stock on July 16, 1944. In this determination the $20,000 worth of stock was included only once as income. Petitioner's third contention is stated as follows: "The government has not shown that the $20,000.00 the corporation deducted as an expense in its 1944-45 return, was not invested in capital assets as called for by the contract, [of July 15, 1944] and returned as income on a later return of the corporation." If the petitioner earned income of $20,000 for services and invested it in the corporation this investment does not relieve him of liability for tax upon the income. What the corporation may have done with this or how it was recorded or returned by the corporation is not controlling as to the petitioner's tax liability. The petitioner has not proved that the Commissioner's determination of a deficiency for 1944 was erroneous. The Commissioner determined petitioner's taxable income for 1946 to be $23,300, representing commissions of $24,600, salary of $1,200, a standard deduction of $500, and two exemptions of $500 each. From these figures he determined a deficiency and an addition *44 to the tax of 25 per cent for failure to file a return. The petitioner says that he filed a return for 1946 and is not liable for any additional tax for that year. The records of the collectors of internal revenue at Baltimore, Maryland, Greensboro, North Carolina, and Columbus, Ohio, (the three districts in which petitioner said he might have filed a return) do not show the filing of any return by the petitioner for 1945 or 1946. The petitioner said that he filed returns for those years, but did not have copies. He had two cancelled checks written in 1945 on May 4 and August 27 in the amounts of $320.89 and $59.40, respectively, which indicated that they had been received by the collector of internal revenue for the district of North Carolina. The petitioner testified that he thought these checks represented payments on his estimated income tax for the year 1945. His testimony is not enough to sustain the burden of showing that he filed a return for 1946. The petitioner argues that if he is liable for income tax for 1946, it was error for the Commissioner to include $20,000 of commissions in 1946 income since this was income received in 1945 and reported on his return for that *45 year. In an agreement dated January 22, 1946, petitioner agreed to take 100 shares of Plastic Toys, Inc. common stock in lieu of $20,000 owed him by the corporation as commissions earned but not withdrawn. The Commissioner determined that the 100 shares of stock issued to petitioner in January 1946 constituted income to him at that time in the amount of $20,000. Stock received by the petitioner, a cash-basis taxpayer, as compensation for services rendered is income to the extent of the fair market value of the stock at the time received. William J. Conlen, 1 B.T.A. 472 (1925). If the services were rendered at a stipulated price, then such price will be presumed to be the fair market value of the stock received as compensation for those services, in the absence of evidence to the contrary. [2] Petitioner has not introduced any evidence to the contrary and therefore the value of the stock is presumed to be $20,000 as the Commissioner determined. But petitioner argues that $13,319.26 of the stock was issued to him to cancel five notes given to him on July 1, 1945 for commissions owing to him at that date and that he included those notes at their face value in his 1945 income *46 and thus that amount cannot be income to him in 1946. The petitioner admitted that he did not have a copy of his 1945 income tax return and the Commissioner found no record of any return alleged to have been filed by petitioner for that year. The Commissioner contends that the notes were not intended as payment for the commissions owing at July 1, 1945, and therefore they were not income to petitioner in 1945. We agree. Plastic Toys, Inc. had less than $1,700 in cash at June 30, 1945 and its prospects for improving *47 this poor cash position in the near future were, at the most, optimistic. When it gave the notes to petitioner, they merely evidenced his debt and were not intended as payment of the commissions owing and hence they were not income to him in 1945. Robert J. Dial, 24 T.C. 117 (1955), Joe W. Scales, 18 T.C. 1263 (1952), reversed on other grounds, 211 Fed. (2d) 133 (C.A. 6, 1954). Also, the notes had no fair market value when given, due to the fact that they were unsecured, the corporation had very little cash, and it was operating its business largely on credit. R. V. Board, 18 B.T.A. 650 (1930). The petitioner's last objection is that when the Commissioner reconstructed income for 1946, he did not attempt to determine the travel and other expenses which petitioner was required to pay out of his commissions and some allowance should be made for this. This objection was not assigned as error in the petition and thus is not properly before the Court. Also, the petitioner has not alleged or proved any amount as having been paid for travel and other expenses in 1946. Petitioner failed to prove that he filed an income tax return for *48 the year 1946. He also failed to introduce any evidence to show that his failure to file was due to reasonable cause and was not due to willful neglect. Accordingly, the addition to tax of 25 per cent determined by the Commissioner must be sustained. Decision will be entered for the respondent. Footnotes
1. SEC. 112. RECOGNITION OF GAIN OR LOSS - As Amended by Sec. 213(a)(b)(c), Rev. Act 1939; Secs. 142(a), 151(d)(e), Rev. Act 1942. (b) Exchanges Solely in Kind. * * *
(5) Transfer to Corporation Controlled by Transferor. - No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. Where the transferee assumes a liability of a transferor, or where the property of a transferor is transferred subject to a liability, then for the purpose only of determining whether the amount of stock or securities received by each of the transferors is in the proportion required by this paragraph, the amount of such liability (if under subsection (k) it is not to be considered as "other property or money") shall be considered as stock or securities received by such transferor. * * *
(h) Definition of Control. - As used in this section the term "control" means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.↩
2. REGULATIONS 111. SEC. 29.22(a)-3. - Compensation Paid Other Than in Cash. - If services are paid for with something other than money, the fair market value of the thing taken in payment is the amount to be included as income. If the services were rendered at a stipulated price, in the absence of evidence to the contrary such price will be presumed to be the fair value of the compensation received. If a corporation transfers to its employees its own stock as compensation for services rendered by the employee, the amount of such compensation to be included in the gross income of the employee is the fair market value of the stock at the time of the transfer. * * *↩